1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY R. BALLIN, | ) 1:09-CV-00953-GSA |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **BACKGROUND**

Plaintiff Jenny R. Ballin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 9 & 10.

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application on or about April 13, 2005, alleging disability beginning July 7, 2004.  AR 60-62, 225-227.  Her application was denied initially (AR 55-59) and on reconsideration (AR 48-52).  Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").  AR 36.  ALJ Michael J. Haubner held a hearing on May 3, 2007 (AR 229-265), and issued an order denying benefits on May 16, 2007.  AR 16-25.  Plaintiff requested a review of the decision (AR 12) and on February 20, 2009, the Appeals Council denied review. AR 7-9.

## Hearing Testimony

ALJ Haubner held a hearing on May 3, 2007, in Fresno, California.  Plaintiff appeared and testified.  She was represented by attorney Melissa Proudian.  Vocational Expert ("VE") Judith Najarian also testified.  AR 229-265.

Plaintiff was born on April 11, 1956.  AR 237.  She lives in Fresno, California, with her sister, her sister's daughter-in-law, and her sister's granddaughter.  AR 236, 238.  She completed the twelfth grade, but has no other education or training.  AR 237, 256.  She has an outstanding workers' compensation claim, but they have not given her a percentage of disability.  AR 237.

Plaintiff suffers from diabetes, diabetic neuropathy, carpal tunnel release, and neck problems.  AR 247-248.  Her fingers "lock" three to four times per day.  *Id.*  She can grasp something for about one minute before she cannot hold it anymore or her fingers lock.  AR 248. She then has to rest her hands for two to three minutes.  AR 248-249.  She has constant pain in her neck, back, right shoulder, hands, and wrists.  AR 249.  Plaintiff  rates her neck and low back pain as an eight out of ten, her hand and wrist pain as a seven or eight out of ten, and her right shoulder pain as a seven out of ten.  AR 249-250.  She sees a doctor every two months.  AR 250. The last time she saw her doctor was April 17, 2007.  *Id.*

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Despite these ailments, plaintiff has a driver's license and drives about twice per month. AR 238-240.  She also rides the bus about once per month.  AR 240-241.  She cooks and does dishes twice per day, cleans the kitchen once per day, and dusts the furniture once per day.  AR 241, 244-245.

Plaintiff is able to take care of her own personal hygiene.  AR 241.  She bathes, dresses, and feeds herself.  *Id.*  She shops for groceries and other items about three times per week.  AR 242.  She goes out to eat about once per week.  AR 242-243.  She visits family, friends, and neighbors about three times per week.  AR 244.  She watches television one and one half hours per day, and reads about ten minutes per day.  AR 245.  She talks on the phone once per day.  AR 243.

Plaintiff's other daily activities include sitting, standing, laying down, and sleeping.  AR 245-246.  Plaintiff lays down for about two hours in an eight-hour day.  AR 246.  She can lift and carry about ten pounds.  *Id*.  She can stand for one half hour at a time.  AR 246-247.  She can sit for about 20 to 30 minutes before she has to get up.  AR 247.  She can walk about one half block at a time.  *Id*.  She can concentrate for twenty minutes at one time, then must stop and take a break for one half hour to an hour.  AR 262-263.  Plaintiff does not do yard work, take out the trash, clean the bathroom, sweep, vacuum, or mop.  AR 244-245.

VE Najarian testified that Plaintiff's previous work as a home companion and as a hotel desk clerk was classified as light, semi-skilled.  Plaintiff's previous work as an agricultural sorter was classified as light, unskilled.  AR 253.  The VE noted that all three positions were consistent with the Dictionary of Occupational Titles (DOT).  AR 254.

VE Najarian was asked to consider a hypothetical individual of Plaintiff's age, education, language, background, and experience, who is precluded from heavy lifting or repetitive neck motions.  AR 257.  The VE indicated that this individual could perform Plaintiff's past work as a hotel clerk and home companion, but could not perform Plaintiff's past work as an agricultural sorter.  *Id*.  This person could also do cashiering.  There are 113,211 unskilled cashier positions and 120,515 semi-skilled cashier positions in California.  AR 257-259.  This person could also

work as a cafeteria attendant and as a housekeeping cleaner of which there are 17,243 and 56,692 jobs in California respectively.  AR 259.

VE Najarian was asked to consider a second hypothetical individual of Plaintiff's age, education, language, background, and experience, who could lift and carry 20 pounds occasionally and 10 pounds frequently, could sit about six hours in an eight-hour workday, and could stand and walk about six hours in an eight-hour workday.  AR 259-260.  This person could never climb ropes, ladders, or scaffolding, but could frequently climb ramps and stairs.  AR 260.  This person could occasionally crouch and crawl, and "do above shoulder handling," could frequently balance, stoop, and kneel, and has unlimited ability to push and pull.  *Id*.  This person should avoid concentrated exposure to unprotected heights.  *Id*.  VE Najarian indicated that this individual could perform Plaintiff's past work as a hotel clerk, home companion, and agricultural sorter, and could perform work as a cashier and cafeteria attendant.  *Id*.

VE Najarian was asked to consider a third hypothetical individual of Plaintiff's age, education, language, background, and experience, who is unable to do work which requires repetitive neck flexion or extension.  AR 260-261.  This person could lift and carry 10 pounds frequently, sit, stand, and walk without restriction.  AR 261.  An assistive device is not necessary, there are no postural limitations on stooping, crouching, or crawling, and there are no environmental, communicative, or visual limitations.  *Id*.  Bending, reaching above the waist, and repetitive handling, feeling, grasping, and fingering should be avoided.  *Id*.   VE Najarian indicated that this individual could not perform any of Plaintiff's past work and could not perform any other work using past relevant work skills.  AR 261-262.

VE Najarian was asked to consider a fourth hypothetical individual of Plaintiff's age, education, language, background, and experience, who could lift and carry 2 to 11 pounds, could stand for one half hour at a time, could sit for 20 to 30 minutes at a time, must lay down for two hours in an eight-hour workday, and could grip and grasp for one minute at a time before having to rest for two to three minutes.  AR 262.  VE Najarian indicated that this individual could not perform any of Plaintiff's past work and could not perform "any other generally appearing work."

4

*Id*. If the limitation that Plaintiff could not concentrate for more than 20 minutes at a time was added to this hypothetical, there would still be no work available. AR 263.

**Medical Record**

The entire medical record was reviewed by the Court. Summaries of the relevant reports and treatment notes are provided below.

### *Paul C. Norwood, M.D.*

On February 12, 2003, Plaintiff was seen by her treating physician, endocrinologist Paul C. Norwood, M.D., at Valley Endocrine, for a follow-up visit. AR 145-146. Dr. Norwood diagnosed Plaintiff with diabetes mellitus and prescribed insulin and glyburide. AR 146.

On November 12, 2003, Plaintiff was seen by Dr. Norwood for complaints of leg pain. AR 143. She was diagnosed with diabetic neuropathy and prescribed vicodin. *Id*.

On March 24, 2004, Plaintiff was seen by Dr. Norwood for complaints of itching skin and lesions on her arms and legs. AR 141. Keflex and triamcinolone cream were prescribed. *Id*.

On July 16, 2004, Plaintiff was seen by Dr. Norwood for complaints of neck pain. AR 138-139. Plaintiff stated that she fell off the stairs at work on January 17, 2004. AR 138. The workers' compensation doctor diagnosed cervical spine strain based on x-rays, and prescribed physical therapy. *Id*. Subsequently, her neck pain became worse. *Id*. Dr. Norwoood diagnosed Plaintiff with two herniated discs and recommended a neurosurgery consultation. AR 138-139. Vicodin was prescribed. AR 139.

On October 11, 2004, Plaintiff was seen by Dr. Norwood for complaints of back pain. AR 135-136. Dr. Norwood noted that Plaintiff had an appointment at USC for her back, and prescribed Norco for her pain. *Id*.

On December 15, 2004, Plaintiff was seen by Dr. Norwood for complaints of back pain. AR 132-133. The doctor noted that Plaintiff did not have a neurosurgery appointment for her back yet. AR 132. He also noted that she was not aggressive enough in taking care of her diabetes and she was non-compliant with her diet by drinking Coca-Cola. AR 132.

On January 25, 2005, Plaintiff was seen by Dr. Norwood for a follow-up visit. AR 129. Dr. Norwood noted that Plaintiff's diabetes control was not as good as it should be. *Id*. He also

1 | noted that she was scheduled for an MRI of her neck. *Id*. On that same day, Dr. Norwood

2 | prepared a note stating that, "[Plaintiff] continues with back pain and is unable to work. She has

3 | an MRI of the back tomorrow. Return to work in 3 months." AR 130.

4 | On May 2, 2005, Plaintiff was seen by Dr. Norwood for a follow-up visit. AR 188-189.

5 | Dr. Norwood noted that Plaintiff had pain when leaning backwards and needed to be hunched

6 | forward. AR 188. He counseled her about her diabetes. AR 189.

7 | On August 30, 2005, Plaintiff was seen by Dr. Norwood for a follow-up visit. AR 185-

8 | 186. Dr. Norwood noted that Plaintiff had pain when leaning backwards and needed to be

9 | hunched forward. AR 185. He counseled her about her diabetes. AR 186.

10 | ***University Medical Center***

11 | On October 22, 2004, Plaintiff was seen by neurologist Dr. Javed at University Medical

12 | Center for an orthopedic consultation because of back pain. AR 160-161.

13 | On January 6, 2005, a neurosurgery referral form indicated that Plaintiff had been

14 | diagnosed with cervical spinal stenosis based on a cervical MRI. AR 157. Reports from Dr.

15 | Norwood indicated that Plaintiff had "partial" response from physical therapy. *Id*. A repeat MRI

16 | was ordered. *Id*.

17 | On January 7, 2005, Plaintiff went to the emergency room for complaints of chronic back

18 | and leg pain. AR 152-156. She had numbness in her toes and burning sensation. AR 153. The

19 | clinical impression included diabetes mellitus, chronic blood pressure, chronic rash, and diabetic

20 | neuropathy. AR 155. Morphine and Ativan were administered and she was discharged after

21 | several hours. AR 153, 156.

22 | On February 10, 2005, a neurosurgery referral form indicated that Plaintiff had mild canal

23 | stenosis with disc bulge on the cervical canal. AR 149. An evaluation was recommended for

24 | upper extremity weakness. *Id*. A neurosurgery appointment was scheduled for February 18,

25 | 2005. *Id*.

26 | On February 18, 2005, Plaintiff was seen by Dr. Javed for complaints of constant back,

27 | neck, leg, and left knee pain. AR 148.

28 |

On May 2, 2005, Plaintiff was seen for an EMG follow-up.  AR 207.  The EMG showed no clear radiculopathy but did show diabetic neuropathy and old carpal tunnel syndrome.  AR 171-172, 207.  Notes indicated that no surgery was needed.  AR 207.

### Rosalinda Serrano, M.D.

On April 5, 2005, orthopedist Rosalinda Serrano, M.D., performed an orthopedic examination at the request of the Department of Social Services.  AR 162-165.  Plaintiff's chief complaint was neck pain.  AR 162.  Her medications included Hydrocodone, Lisinopril, and Novolin.

Plaintiff stated that she injured her neck when she fell down stairs while working as a hotel clerk.  *Id*.  X-rays of Plaintiff's cervical spine showed degenerative joint disease and an MRI showed central disc protrusion and degenerative changes.  *Id*.  Plaintiff also stated that she sustained a work-related injury to her hands while working for a packing company.  *Id*.  She had bilateral carpal tunnel surgeries in 1993 and reported no subsequent problems with her wrists. *Id*.

On examination, Plaintiff's cervical spine range of motion was less than normal.  AR 163.  However, contour, curvature, and alignment of the cervical spine was normal.  *Id*.  There was pain with range of motion in the cervical spine and pain and tenderness at C3-T1 bilaterally, upper trapezius, scapular, and rhomboid.  *Id*.  Lumbar spine range of motion was within normal limits.  *Id*.  Curvature was normal, there was no tenderness to percussion, and no sciatic notch tenderness.  *Id*.

Straight leg raising was negative bilaterally and range of motion in the upper and lower extremities was normal.  AR 164.  There was no evidence of joint pain, swelling, tenderness, or inflammation and no evidence of gross deformities, subluxation, contractures, or ankyloses.  *Id*. Pulse was normal.  *Id*.  Hand grip strength was 4/5 bilaterally due to pain radiating from the neck. AR 165.  Motor strength was 4/5 in the upper extremities bilaterally and 5/5 elsewhere.  Id. Reflexes were 1+ at the brachiordialis, triceps, and biceps, and 2+ elsewhere.  *Id*.

Dr. Serrano's impression was sprain/strain of the cervical spine, cervical degenerative joint disease, cervical disc disease, and history of bilateral carpal tunnel, diabetes mellitus,

hypertension, and previous left knee surgery.  AR 165.  The doctor opined that Plaintiff could lift

and carry 10 pounds frequently,[3] and sit, stand and walk without restriction.  *Id*.  Plaintiff could

not do work which requires repetitive neck flexion or extension, and should avoid bending,

reaching above the waist, and repetitive handling, feeling, grasping, and fingering.  *Id*.  There are

no postural limitations with stooping, crouching, and crawling and no environmental,

communicative, or visual limitations.  *Id*.  No assistive device is necessary.  *Id*.

### *Physical Residual Functional Capacity Assessment*

On June 2, 2005, state agency medical consultant James B. Peery, M.D., performed a

Physical Residual Functional Capacity (RFC) Assessment of Plaintiff.  AR 173-180.  The doctor

opined that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally,

stand and/or walk about six hours in an eight-hour workday, sit for six hours in an eight-hour

workday, and push and/or pull without limit.  AR 174.  In support of this determination, the

doctor noted that the MRI showed degenerative joint disease, degenerative disc disease with disc

protrusion, and some canal stenosis in the cervical region.  *Id*.  The doctor also cited decreased

range of motion in the cervical spine, decreased motor strength, pain on range of motion, 4/5 grip

and motor strength, decreased sensation in C5-6, and 1+ reflexes in bilateral upper extremities.

*Id*.

Dr. Peery opined that Plaintiff could never climb ladders, ropes, or scaffolds and could

only occasionally crouch and crawl.  AR 175.  She was limited in her ability to handle and to

reach above her shoulders.  AR 176.  She should avoid concentrated exposure to unprotected

heights.  AR 177.  There were no visual or communicative limitations.  AR 176-177.  The doctor

further opined that the medical evidence does not support a sedentary RFC.  AR 179.

On November 16, 2005, state agency medical consultant James V. Glaser, M.D.,

reviewed and affirmed the RFC.  AR 180.

///

///

---

[3] Dr. Serrano's notes in the record state, "The patient can lift and carry 10 pounds occasionally frequently."
AR 165.  The court interprets this as ten pounds frequently.

1    ***Steven D. Feinberg, M.D.***

2        On May 31, 2006, qualified medical evaluator Steven D. Feinberg, M.D., performed an

3    examination of Plaintiff pursuant to her workers' compensation claim. AR 194-205. Plaintiff

4    complained of "stabbing pain" in her neck, which radiated between and below the shoulder

5    blades, severe stiffness and pain in her right hand, occasional pain in her arms, and pain in her

6    lower back, left hip, left knee, and left hand. AR 198. On a scale of one to ten, she rated her

7    pain as a nine to ten without medication and six with medication. *Id*. She also complained of

8    numbness and tingling in her feet and difficulty sleeping. AR 198-199. Plaintiff's medications

9    included Hydrocodone, Diovan, Cymbalta, and Insulin. AR 199.

10       Dr. Feinberg noted that Plaintiff's pain increased when she sat for one hour and when she

11   bent her neck. AR 198. She was unable to stand in one place for more than 15 minutes. *Id*. She

12   has pain down her left leg when walking for 5-10 minutes. *Id*. She has trouble vacuuming,

13   sweeping, and mopping, and her family does the cooking and cleaning. *Id*.

14       The physical examination revealed that Plaintiff was "hesitant moving about" and

15   walked with a slow but normal gait. AR 200.   She had normal range of motion in her shoulder,

16   upper body, hip, and lower body. *Id*. Her cervical extension and lumbar flexibility was 50

17   percent of normal with discomfort, but her cervical range of motion was otherwise normal. *Id*.

18   There was no muscular atrophy of the extremities. *Id*. Grip strength was 9/7/2 with the right

19   hand and 14/8/5 with the left hand, limited by pain. *Id*. Sensation was decreased below the

20   knees. *Id*. Straight leg raising was negative. AR 201. Reflexes were +2 throughout. *Id*. Ulnar

21   Tinel's was positive at both elbows and Median Tinel's and Phalen's were positive bilaterally.

22   *Id*. Dr. Feinberg's impression included diabetes mellitus, cervical spondylosis, probably lumbar

23   spondylosis, and probable diabetic peripheral neuropathy. *Id*.

24       ***Radiological Reports***

25       On July 7, 2004, radiologist Mark Alson, M.D., at Saint Agnes Medical Center,

26   performed x-rays of Plaintiff's cervical spine. AR 120. Plaintiff complained of neck pain

27   radiating to the right shoulder. *Id*. Dr. Alson's impression was disc space narrowing at C4-5

28

1  with multi-level posterior osteophyte formation at C4-5 through C6-7.  *Id*.  He found no acute

2  pathology of the cervical spine.  *Id*.

3      On July 9, 2004, radiologist Teresa Chan, M.D., at Saint Agnes Medical Center,

4  performed an MRI of Plaintiff's cervical spine.  AR 110-112.  Plaintiff complained of numbness

5  and swelling to the right hand and neck pain for eight months.  AR 110.  Dr. Chan's impression

6  at C6-7 was broad based central protrusion with eccentricity towards the right and a small

7  extruded component extending superiorly.  AR 112.  There was also moderate central stenosis

8  particularly at the right side of the canal proximal right neural foraminal stenosis.  AR 112.  Dr.

9  Chan's impression at C5-6 was broad based central disc protrusion also resulting in stenosis, and

10  possible calcification at the posterocentral disc margin.  *Id*.  Dr. Chan also found mild

11  degenerative changes with no significant stenosis at other levels.  *Id*.

12      On February 8, 2005, radiologist Phillip Tran, M.D., at University Medical Center,

13  performed an MRI of Plaintiff's cervical spine.  AR 150-151.  The impression included mild to

14  moderate right neural foraminal narrowing at C6-7 due to underlying endplate spurring, and mild

15  central canal stenosis at C5-6 due to minimal broad base annular disc bulge as well as

16  superimposed central disc protrusion.  AR 151.

17      **ALJ's Findings**

18      The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 7,

19  2004, and had the severe impairments of diabetes mellitus, diabetic neuropathy, status post carpal

20  tunnel release, and cervical degenerative disc disease with radiculopathy.  AR 21.  Nonetheless,

21  the ALJ determined that the severe impairments did not meet or exceed one of the listed

22  impairments.  AR 22.

23      The ALJ reviewed the medical evidence and determined that Plaintiff had the RFC to

24  perform light work, with the addition of avoiding repetitive neck motion.  AR 22.  The ALJ

25  further determined that Plaintiff was capable of performing her past relevant work as a home

26  companion and desk/hotel clerk.  AR 24.  Accordingly, the ALJ found that Plaintiff was not

27  disabled, as defined in the Social Security Act.  *Id*.

28  ///

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

11

1  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found

2  that Plaintiff: (1) had not engaged in substantial gainful activity since July 7, 2004, the alleged

3  onset of his disability; (2) had an impairment or a combination of impairments that is considered

4  "severe" based on the requirements in the Regulations (20 C.F.R. §§ 404.1520(c), 416.920(c));

5  (3) does not have an impairment or combination of impairments which meets or equals one of the

6  impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; and (4) could perform her past

7  relevant work.  AR 21-24.

8        Here, Plaintiff argues that the ALJ failed to properly evaluate the medical evidence and

9  improperly rejected Plaintiff's testimony.

10                                    **DISCUSSION**

11       *A.    Medical Evidence*

12       Plaintiff argues that the ALJ failed to properly evaluate the medical evidence regarding

13  Plaintiff's lifting and upper extremity limitations.  Plaintiff contends that the ALJ erred in giving

14  Dr. Feinberg's evaluation greater weight than Dr. Serrano's opinion because Dr. Serrano's

15  opinion was a more accurate representation of Plaintiff's disability.

16       Specifically, Plaintiff asserts that Dr. Feinberg's assessment was limited because it was

17  completed in the context of workers' compensation proceedings and his findings only addressed

18  Plaintiff's cervical spine.  Despite these limitations, however, when read in the context of a

19  workers' compensation evaluation, Dr. Feinberg's evaluation is consistent with Dr. Serrano's

20  findings.  In particular, Dr. Feinberg's report suggests that Plaintiff could not go back to her

21  former occupation and that heavy lifting and repetitive neck motions should be precluded.

22  Plaintiff argues that in the context of workers' compensation claims, a "preclusion from heavy

23  lifting" means that Plaintiff can perform only half of her previous lifting, which in this case, was

24  a ten pound lifting requirement. AR 195, 203.  Furthermore, Plaintiff asserts that under the

25  subjective factors of disability assessment identified by Dr. Feinberg, Plaintiff would experience

26  constant pain with lifting only half of her pre-injury ten pound lifting ability and occasional

27  bending of the neck.  Plaintiff argues that the ALJ had an obligation to review this factor as well

28

1   as the workers'compensation assessment so that a meaningful translation into the Social Security

2   paradigm could occur.

3          Defendant argues that the ALJ appropriately considered Plaintiff's non-exertional

4   limitations by according more weight to Dr. Feinberg's opinion because Dr. Feinberg is a

5   specialist and Dr. Feinberg's opinion was more thorough than Dr. Serrano's.  Moreover,

6   Defendant contends that while not conclusive, the ALJ is entitled to draw inferences logically

7   flowing from the evidence in a workers' compensation hearing.

8          Here, when evaluating the physician reports, the ALJ noted the following :

9          While the physical medicine consulting examiner puts claimant at a very restricted
           sedentary residual capacity, greater weight to the more recent Workers' Compensation
10         Physical Medicine AME [is given] (... the basis for my first hypothetical question which I
           adopt and which is set forth in Finding 5), as he is Board Certified, while the consulting
11         physician is not.  Furthermore, the AME did a much more thorough report and he had
           access to a multitude of records that were apparently not available to the consulting
12         physician.  A less restricted residual functional capacity than that imposed by the
           consultative examiner is also supported by several Disability State Agency (DSA)
13         physicians (the basis for hypothetical #2).  The vocational expert testified that if the
           claimant were so restricted, or limited, she could perform all three of the jobs described
14         as claimant's past relevant work.

15  AR 23 (internal citations omitted).  The Court agrees with Defendant's argument that Dr.

16  Feinberg's board certification and more thorough evaluation are valid reasons for the ALJ to

17  afford Dr. Feinberg's report the most weight.  However, the ALJ's reliance on Dr. Feinberg's

18  report is problematic for another reason.  Workers' compensation disability ratings are not

19  controlling in disability cases decided under the Social Security Act, and the terms of art used in

20  the California workers' compensation guidelines are not equivalent to Social Security disability

21  terminology.  *See*, *Macri v. Chater*, 93 F. 3d 540, 544 (9th Cir. 1996); *Desrosiers v. Secretary of*

22  *Health and Human Services*, 846 F 2d 573, 576 (9th Cir. 1988).  Furthermore, the ALJ is entitled

23  to draw logical inferences flowing from the evidence in a workers' compensation proceeding.

24  *Macri v. Chater*, 93 F. 3d at 543.  However, in doing so, an ALJ must "translate" terms of art

25  contained in such medical opinions into corresponding Social Security terminology in order to

26  accurately assess the implications of those opinions for the Social Security disability

27  determination.  *See*, *Desrosiers v. Secretary of Health and Human Services*, 846 F. 2d at 576 (the

28  categories of work under the Social Security scheme are measured quite differently than under

1 | the California workers' compensation scheme.  It is clear from the record that the ALJ did not

2 | consider this distinction.")

3 | In this case, the ALJ found Plaintiff had an RFC to perform light work.  AR 22.  Light

4 | work involves lifting no more than twenty pounds at a time with frequent lifting or carrying

5 | objects weighing up to ten pounds. 20 C.F.R. §§ 404.1567(b); 416.967 (b).  Although the ALJ

6 | indicates that his adopted hypothetical, in which Plaintiff is precluded from heavy lifting with an

7 | additional limitation of avoiding repetitive neck motions,[4] is consistent with Dr. Feinberg's

8 | assessment, he is mistaken.  AR 23.  Dr. Feinberg's report notes that Plaintiff is precluded from

9 | heavy lifting.  As this Court understands the workers' compensation rules, a term of disability

10 | precluding heavy lifting suggests that the individual has lost approximately 50% of the pre-injury

11 | capacity for lifting.  *Schedule for Rating Permanent Disabilities , Guidelines for Work Capacity*

12 | *(April 1, 1997)* 1-7.  *Spine and Torso Guidelines* 2-14.  Earlier in the report, Dr. Feinberg noted

13 | that Plaintiff's previous job as a desk clerk required her to lift "under ten pounds."  AR 195.

14 | Therefore, it appears Dr. Feinberg indicates that Plaintiff may not be able to lift more than five

15 | pounds. [5] This is inconsistent with the ALJ's finding that Plaintiff can perform light work.

16 | Nothing in the ALJ's decision demonstrates that he adequately considered the distinction

17 | between the workers' compensation rubric set forth in Dr. Feinberg's report, and the definition of

18 | light work under the Social Security disability paradigm.

---

[4] In the ALJ's first hypothetical, VE Najarian was asked to consider an individual of Plaintiff's age, education, language, background, and experience, who is precluded from heavy lifting or repetitive neck motions. AR 257.  The VE indicated that this individual could perform Plaintiff's past work as a hotel clerk and home companion, but could not perform Plaintiff's past work as an agricultural sorter.  *Id.*  This person could also do cashiering.  AR 259.

VE Najarian was asked to consider a second hypothetical individual of Plaintiff's age, education, language, background, and experience, who could lift and carry 20 pounds occasionally and 10 pounds frequently, could sit about six hours in an eight-hour workday, and could stand and walk about six hours in an eight-hour workday.  AR 259-260.  This person could never climb ropes, ladders, or scaffolding, but could frequently climb ramps and stairs. AR 260.  This person could occasionally crouch and crawl, and handle above the shoulder, could frequently balance, stoop, and kneel, and has unlimited ability to push and pull.  *Id.*  This person should avoid concentrated exposure to unprotected heights.  *Id.*  VE Najarian indicated that this individual could perform Plaintiff's past work as a hotel clerk, home companion, and agricultural sorter, and could perform work as a cashier and cafeteria attendant.  *Id.*

[5] The Commissioner did not address this aspect of Plaintiff's argument.

1    Moreover, Dr. Feinberg found that Plaintiff's "subjective factor of disability" would be

2    described as experiencing slight to occasional moderate pain for her cervical spine, which would

3    become moderate with heavy lifting or repetitive neck motions. AR 203.   Under California

4    workers' compensation guidelines, a disability may be rated by using a worker capacity index or

5    a subjective factor index and the final rating is based on the index yielding the higher (that is the

6    more restrictive) rating. *Glass v. Workers. Comp. Appeals Bd.*, 105 Cal. App. 3d 297 (1980).

7    Under the workers' compensation paradigm, moderate pain could be tolerated but would cause a

8    marked handicap in the performance of the activity precipitating the pain.  Cal. Code Regs. Tit.

9    8, § 9727.  Plaintiff would therefore experience moderate pain when doing heavy lifting.  While

10   the ALJ was not obligated to adopt this finding, he failed to acknowledge or adequately analyze

11   this aspect of Dr. Feinberg's opinion. *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1107 (C.D. Cal.

12   2002) (The subjective rating index is a rating tool that constitutes a medical opinion).

13   Given the apparent misreading of Dr. Feinberg's report by the ALJ, the Court rejects

14   Plaintiff's argument that Dr. Serrano's report is more comprehensive and should be afforded

15   more weight than Dr. Feinberg's findings.  However, a remand is appropriate to allow the ALJ to

16   consider Dr. Feinberg's report in the workers' compensation context to determine the

17   transferability of skills in the Social Security arena.  The ALJ shall also assess the weight given

18   to Dr. Serrano and the state agency physicians' evaluations in light of Dr. Feinberg's findings.

19   **B.    *Plaintiff's Testimony***

20   Plaintiff argues that the ALJ provided insufficient reasons for rejecting Plaintiff's

21   testimony.  Defendant argues that the ALJ appropriately assessed Plaintiff's credibility.

22   A two step analysis applies at the administrative level when considering a claimant's

23   subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the

24   claimant must produce objective medical evidence of an impairment that could reasonably be

25   expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282.  If the

26   claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the

27   claimant's testimony regarding the severity of his symptoms only if he makes specific findings

28   that include clear and convincing reasons for doing so. *Id*. at 1281.  The ALJ must "state which

1 testimony is not credible and what evidence suggests the complaints are not credible." *Mersman*

2 *v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack

3 of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it

4 impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial

5 evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific

6 to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave

7 to the individual's statements and reasons for that weight").

8        An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v.*

9 *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's

10 reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

11 testimony by the claimant that appears less than candid, unexplained or inadequately explained

12 failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

13 activities, claimant's work record, or the observations of treating and examining physicians.

14 *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

15       The first step in assessing Plaintiff's subjective complaints is to determine whether

16 Plaintiff's condition could reasonably be expected to produce the pain or other symptoms

17 alleged.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that

18 Plaintiff had the severe impairments of diabetes mellitus, diabetic neuropathy, status post carpal

19 tunnel release, and cervical degenerative disc disease with radiculopathy.  AR 21.  He further

20 found that

21       [Plaintiff's] medically determinable impairments could reasonably be expected to
         produce some of the alleged symptoms, but that [Plaintiff's] statements concerning the
22       intensity, persistence and limiting effects of these symptoms are not entirely credible.

23 AR 23.  This finding satisfied step one of the credibility analysis.  *Smolen*, 80 F.3d at 1281-1282.

24       Because the ALJ did not find that Plaintiff was malingering, he was required to provide

25 clear and convincing reasons for rejecting Plaintiff's testimony.  *Smolen*, 80 F.3d at 1283-1284;

26 *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an

27 underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the

28 severity of his symptoms solely because they are unsupported by medical evidence.  *Bunnell v.*

1  *Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7.  Moreover, it is not sufficient for the ALJ

2  to make general findings; he must state which testimony is not credible and what evidence in the

3  record leads to that conclusion.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*,

4  947 F.2d at 345-346.

5       In this case, the ALJ made several credibility findings.  He stated:

6      while [Plaintiff] has a fairly good work history, I note she seemed to exaggerate
   somewhat.  For example, she stated she could only concentrate 20 minutes maximum, yet
7      paid attention and responded appropriately throughout her hearing (about 50 minutes).
   Additionally, she said she could only sit 20 to 30 minutes maximum, yet sat for 40
8      minutes (after standing during the first part of the hearing).  Furthermore, while she
   testified she could only lift less than "2 pounds," she later admitted to lifting groceries
9      weighing more than 10 pounds (i.e., a gallon of milk and a quart of cooking oil).

10  AR 24.  (Citations omitted).

11      Plaintiff argues that the ALJ's finding that Plaintiff exaggerated her symptoms during her

12  testimony is insufficient rationale to reject Plaintiff's testimony.  This argument is without merit.

13  The ALJ may consider Plaintiff's reputation for truthfulness, prior inconsistent statements

14  concerning her symptoms, and other testimony by Plaintiff that appears less than candid.

15  *Smolen*, 80 F.3d at 1284.  Here, the ALJ considered Plaintiff's testimony about her ability to

16  concentrate, sit, and lift with her hands.  Plaintiff's actual ability to pay attention for 50 minutes

17  at the hearing was inconsistent with her statement that she could only concentrate for 20 minutes

18  and then must take a break for one half hour to an hour.  AR 24, 262-263.  Plaintiff's actual

19  ability to sit for 40 minutes at the hearing was inconsistent with her statement that she can sit for

20  20 to 30 minutes before she has to get up.  AR 24, 247.  Plaintiff's statement that she could lift

21  less than two pounds is inconsistent with her statement that she could lift a bag of groceries

22  containing a gallon of milk and a quart of oil.  AR 246.  These inconsistencies are legitimate

23  bases for the ALJ to rely upon when making a credibility determination.

24      Plaintiff argues that a review of the testimony shows she misunderstood the ALJ's

25  question.  After Plaintiff testified she could lift "less than 10" pounds, the ALJ asked, "And what

26  does that mean?  Point five of a pound?  Half a pound, or does it mean nine and a half pounds?  I

27  don't know what less than 10 means."  In response to the ALJ's question, Plaintiff clearly

28

1    responded that she could lift two pounds.  AR 246.  Plaintiff's argument that this question was

2    misunderstood is without merit.  The ALJ was simply clarifying her previous answer.

3           Plaintiff further argues that the ALJ incorrectly made an adverse credibility determination

4    based on her testimony about her daily activities.  An ALJ can look to daily living activities as

5    part of the credibility analysis.  *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005).  If a claimant is

6    able to spend a substantial part of his day engaged in pursuits involving the performance of

7    physical functions that are transferable to a work setting, a specific finding as to this fact may be

8    sufficient to discredit a claimant's allegations.  *Morgan v. Commissioner of Social Sec. Admin.,*

9    169 F.3d 595, 600 (9th Cir. 1999).  The ALJ must make "specific findings relating to [the daily]

10   activities" and their transferability to conclude that a claimant's daily activities warrant an

11   adverse credibility determination.  *Orn v. Astrue,* 495 F.3d at 639.

12          As stated by the ALJ:

13              [Plaintiff's] does a wide range of activities of daily living not consistent with her
            allegations of total disability.  For example, she lives with her sister, her daughter-in-law,
14          and her sister's granddaughter (and her daughter frequently visits). [Plaintiff] also has a
            driver's license with no restrictions except for corrective lenses, she drives a car with
15          automatic transmission several times a month when she can borrow a car, otherwise she
            gets rides. [Plaintiff] also rides the bus once a month.  Additionally, [Plaintiff] brushes
16          her own teeth and hair, feeds herself, puts clothes on, showers/bathes herself, cooks 2
            times a day, does dishes 2 times a day, shops for groceries 3 times a week and shops for
17          other items 3 times a week. [Plaintiff] also goes out to eat once a week, talks on the
            phone once a day, visits outside her home 3 times a week, cleans the kitchen once a day,
18          dusts 1-2 times a day, reads daily for 10 minutes, and watches TV 1½ hours daily.

19   AR 24.  (Citations omitted).

20          Here, the ALJ noted that Plaintiff was able to perform a wide range of tasks which

21   undermined her credibility including driving, riding the bus, taking care of her personal hygiene,

22   cooking and eating, bathing and dressing, cleaning and doing dishes, shopping, going out to eat,

23   and visiting outside her home.  This coupled with the ALJ's reliance on Plaintiff's exaggeration

24   and inconsistent testimony constitutes clear and convincing reasons for finding Plaintiff not

25   credible.  Accordingly, the ALJ did not arbitrarily discredit claimant's testimony.  Furthermore, it

26   is not the role of the Court to redetermine Plaintiff's credibility *de novo.*  Although evidence

27   supporting an ALJ's conclusions might also permit an interpretation more favorable to the

28   claimant, if the ALJ's interpretation of evidence was rational, as here, the Court must uphold the

18

1   ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch*

2   *v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  As the ALJ's credibility finding was based on

3   substantial evidence, the ALJ need not apply the "*Smolen*" test as Plaintiff argues.

4                                                    **REMAND**

5           Section 405(g) of Title 42 of the United States Code provides: "the court shall have the

6   power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

7   or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

8   In Social Security cases, the decision to remand to the Commissioner for further proceedings or

9   simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d

10  599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original

11  administrative proceedings, a Social Security case should be remanded.  Where, however, a

12  rehearing would simply delay receipt of benefits, reversal and an award of benefits is

13  appropriate."  *Id.*  (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859

14  F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no

15  useful purpose would be served by further administrative proceedings, or where the record has

16  been thoroughly developed.").

17          In this case, the Court finds that the case should be remanded to allow the ALJ the

18  opportunity to review the medical evidence as outlined above.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

## CONCLUSION

2       Based on the foregoing, the Court finds that the ALJ's decision is not supported by

3   substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for

4   further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter

5   judgment in favor of Jenny Ballin and against Defendant Michael J. Astrue, Commissioner of

6   Social Security.

7

8

9

10       IT IS SO ORDERED.

11   **Dated:    September 27, 2010**                  **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28